UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YANA BROWER,

    Plaintiff,

v.                                                    Case No. 1:20-cv-260

                                                          Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff filed applications for DIB and SSI on August 20, 2017, and October 10, 2017, respectively, alleging a disability onset date of August 20, 2015. PageID.51. Plaintiff sustained injuries in an automobile accident on July 2, 2012. PageID.75. At the time, plaintiff was 33 years old. PageID.68. Plaintiff identified her disabling conditions as: injuries to her neck, head, and shoulder; depression due to chronic pain; and, vomiting and nausea due to severe pain. PageID.230. Prior to applying for DIB and SSI, plaintiff completed the 12th grade and completed specialized training as a practical nurse in 2015. PageID.231. Plaintiff had past employment as a bank currier, massage therapist, caretaker and receptionist. PageID.232. The ALJ reviewed plaintiff's claim de novo and entered a written decision denying benefits on May 1, 2019.

1

PageID.51-60. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.   LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the [Commissioner] to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the

3

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ's DECISION

Plaintiff's claim failed at the fourth step.  However, the ALJ made an alternative finding at the fifth step.  At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 20, 2015, and that she met the insured status requirements of the Social Security Act through December 31, 2019.  PageID.53-54.  As discussed in greater detail, *infra*, the ALJ found that plaintiff worked in 2018, but that "this work activity did not rise to the level of substantial gainful activity," noted that "the claimant reported her employer accommodates this work, as she is able to call in sick or leave work early when necessary," and that "[i]n light of the reported accommodations, and noting the total wages, the undersigned finds this work is not substantial gainful activity."  PageID.54.

At the second step, the ALJ found that plaintiff has severe impairments of occipital neuralgia and degenerative disc disease of the cervical spine.  *Id*.  At the third step, the ALJ found that plaintiff does not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.55.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).

PageID.55.  The ALJ also found that plaintiff is capable of performing her past relevant work as a medical assistant, work which does not require the performance of work-related activities precluded by plaintiff's residual functional capacity (RFC).  PageID.58.

As an alternative, at the fifth step, the ALJ concluded that,

4

> Based on a residual functional capacity for the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 202.21.

PageID.59. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from August 20, 2015 (the alleged onset date) through May 1, 2019 (the date of the decision). PageID.59-60.

### III. DISCUSSION

Plaintiff has raised one error on appeal.

**The ALJ's decision lacks substantial evidence when it disregards specific evidence which was requested at the hearing and which compels a finding of disability.**

Plaintiff contends that she cannot work full time. As discussed, plaintiff has worked in a part-time, accommodated position since the alleged onset date. At the time of the administrative hearing (February 27, 2019), plaintiff was working at Higher Health Chiropractic. PageID.71. Plaintiff was a patient for many years and Higher Health was aware that she "had no finances." *Id*. The office helped out plaintiff by offering her a job and accommodating her situation. PageID.71-72. Plaintiff has a license as an LPN and works in the "back office" doing "paperwork," *e.g.*, "make care plans, audit people's accounts and things like that." PageID.72. When asked how many hours a week she works, plaintiff replied,

> It depends how my week is going, pain-wise. I average anywhere between 15 and 18 hours a week. But again, it just varies, if I'm leaving early, work [sic], due to pain, I called in a few times due to pain [sic].

*Id*.[1] The office pays plaintiff about half of what she could make as an LPN, because she is unable to perform all of the physical work of an LPN. *Id*. While working part-time, plaintiff is able to sit, stand and take a break about once an hour. PageID.83. Plaintiff testified that she leaves early

---

[1] The Court notes that English is not plaintiff's first language. Plaintiff was born in the U.S.S.R. (Azerbaijan) and moved to the United States when she was about 11 years old. PageID.68-69.

5

at least once a week due to pain and misses about two days a month. PageID.85. Plaintiff also requested a week off in November 2018 because her pain was so bad. *Id*. In this regard, the office has changed plaintiff's schedule three times since June 2018 so that she has at least two days of rest in between the days that she works. PageID.88. In effect, plaintiff is working, at most, three days a week.

On February 4, 2019, plaintiff's employer, Dr. Eric Kowalke, prepared the following letter which explains the accommodations made for plaintiff:

> To Whom It May Concern:
>
> Yana Babayan [plaintiff] is currently employed with us. She is working a part time schedule due to her health concerns which limit her ability to work prolonged hours. We have built her schedule to best suit her needs. There are many days that she is at work and in pain as she is unable to call in on those days that she is scheduled to work. Over the course of the last several months there have been days when Yana had to leave work due to the pain she experiences limiting her ability to focus. Despite her circumstances we are willing to work with Yana to ensure we help with managing her health concerns appropriately.

PageID.803 (Exhibit 16F). Plaintiff's counsel referenced the letter at the hearing. PageID.87-88.

At the hearing, the ALJ expressed interest in her employer's attendance records, *i.e.*, a list of the days plaintiff worked, the days she was absent, and the days she left early. PageID.94-95. The ALJ asked plaintiff to have somebody in the office "get you a copy of it and then send it to Mr. Geelhoed and he can forward it on to me." PageID.94-95.

On questioning by plaintiff's counsel, the vocational expert (VE), Ms. Smith-Cordingly, testified that plaintiff's history of missing work for two days a week would preclude full-time employment:

> Q   Ms. Smith-Cordingly, if an individual, the same age, education and background as Ms. Brower required two days off between days of working, would that be work preclusive?
>
> A   Well it would preclude full-time work.

6

PageID.108.

After the hearing, plaintiff's employer submitted a second letter dated April 1, 2019, which stated in pertinent part as follows:

> To Whom It May Concern:
>
> Yana Babayan is currently employed with us. She is working a part time schedule due to her health concerns which limit her ability to work prolonged hours. We have built her schedule to best suit her needs. There are many days that she is at work and is in pain as she is unable to call in on those days that she is scheduled to work. Over the course of the last several months there have been days when Yana had to leave work due to the pain she experiences limiting her ability to focus. Despite her circumstances we are willing to work with Yana to ensure we help with managing her health concerns appropriately.
>
> Page 2 lists dates where Yana was unable to be at work or had to leave work as a result of the pain she was in. We have accommodated her needs by rearranging her schedule, cutting down her hours, and creating a new workspace to suit her needs which included adding a custom chair and custom computer station. Regardless of these changes there are still days/times that she is unable to be at work due to her circumstances. In my working career I have not been a part of any company who would employ an individual with these circumstances due to reliability concerns. Due to the nature of our business and the higher mission that we serve, we are willing to continue accommodating Yana knowing that it would be difficult for her to find employment elsewhere.

PageID.269 (Exhibit 11E). The second page of the letter indicates that from March 28, 2018, through June 11, 2018, "she was only able to work around 5 hours/week." PageID.270. The letter also lists 19 days from June 18, 2018, through March 15, 2019, that plaintiff missed scheduled shifts, including five consecutive days in November. *Id*.

Plaintiff's claim is summarized in the following paragraph:

> Ms. Brower provided a statement from her employer about why she could do no more than part-time work and had attendance problems even with a schedule built to suit her needs. (PageID.803). The ALJ asked her to obtain a statement quantifying the frequency of absenteeism. (PageID.94 & 108). The employer provided that statement. (PageID.269-270). The Decision disregards this evidence, never mentioning it in denying benefits. The Decision lacks substantial evidence to deny benefits.

7

Plaintiff's Brief (ECF No. 18, PageID.816).

The question in this case is whether the ALJ's decision is supported by substantial evidence, when the ALJ explicitly requested the claimant to submit employment records after the hearing to corroborate the claimant's testimony regarding her regarding her employment history at Higher Health Chiropractic, the claimant submitted the requested records, and then the ALJ did not address the records in his written decision.  To place this question in context, the Court finds it notable: that plaintiff is a part-time employee scheduled for about 18 hours a week; that plaintiff's employer made significant accommodations for her; that the ALJ found that this work did not qualify as substantial employment for purposes of the disability claim; that plaintiff's testified that she leaves work early and missed about two days a month of work; and, that the VE testified that missing two days of work a week would preclude full-time employment.  In short, if plaintiff's testimony regarding her ability to work is accurate, then the VE's testimony would establish that plaintiff could not perform full-time work.

It appears that the ALJ recognized the significance of the employer's attendance records and asked that plaintiff provide those records to him for review.  The employer's letter is included in the list of exhibits attached to the ALJ's decision.  PageID.63.  Plaintiff points out that the regulations require the Commissioner to consider "all evidence in your case record." 20 C.F.R. §§ 404.1520(a)(3) and 416.920(a)(3).  An ALJ's decision is not supported by substantial evidence when the decision disregards a "significant portion of the record as having no probative value." *Howard v Commissioner of Social Security*, 276 F.3d 235, 241-42 (6th Cir. 2002) (ALJ improperly dismissed treatment notes of 26 visits between March 17, 1995, and November 11, 1996, as "mostly . . . handwritten gobblegook notes from the doctor that have no probative value in this case") (internal quotation marks omitted).

Defendant points out that the ALJ considered the evidence and that a lower articulation requirement applies to this evidence under the regulations applicable to claims filed on or after March 27, 2017, "'we are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." 20 C.F.R. §§ 404.1520c(d), 416.920c(d).'"  Defendant's Brief (ECF No. 19, PageID.829).

Based on the record in this case, the Court does not consider a lower articulation requirement applicable for this particular evidence, which the ALJ specifically requested to be submitted after the hearing. The employer's letters set out plaintiff's history of missing work for up to two days a week due to her poor health. Based on the VE's testimony, this absenteeism would be work preclusive. PageID.108. The employer's letters shed light on the nature of plaintiff's part-time work, her attendance, and whether her medical condition caused work-preclusive absences. As the Sixth Circuit observed in *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517 (6th Cir. 1985):

> It is more than merely "helpful" for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.

*Hurst*, 753 F.2d at 519.

Furthermore, in the Court's opinion, it is not consistent with the inquisitorial nature of disability proceedings for an ALJ to ask a claimant to submit specific evidence after the hearing and then not address the requested evidence in the written decision. *See Sims v. Apfel*, 530 U.S. 103, 110-111 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.").

9

While the ALJ's decision did not discuss the post-hearing evidence regarding plaintiff's accommodations and limited work schedule, he repeatedly cited plaintiff's ability to perform the part-time work as evidence that she was not disabled.

In determining whether plaintiff met a listed mental impairment at step three, the ALJ reviewed the "paragraph B" criteria of the listings and determined that plaintiff had only a "mild limitation" in both the second functional area (interacting with others) and the third functional area (concentrating, persisting, or maintaining pace). PageID.54. The ALJ's conclusion that plaintiff had only mild limitations was based, in part, on the fact that she "maintained part-time employment." PageID.54.

In evaluating plaintiff's RFC, the ALJ summarized plaintiff's testimony in part as follows,

> [Plaintiff] admitted working as of the hearing date, and that she has been working for many months for the same employer. However, she stated she left work early about once each week because of pain. The claimant has also called in sick to work about twice monthly because of her symptoms.

PageID.56. This summary does not fairly represent the actual circumstances of plaintiff's part-time work arrangement and the accommodations made by her employer. The ALJ's use of the term "admitted" suggests that plaintiff was not forthright about her work history. As the hearing transcript bears out, plaintiff readily discussed her part-time employment at Higher Health. PageID.71-72.

In addition, the ALJ considered plaintiff's ability to perform part-time work as evidence that her symptoms improved,

> The claimant received bilateral occipital nerve blocks and had treatment with a chiropractor during the period at issue. She admitted on multiple occasions that both these treatment methods helped her symptoms. An April 2018 MRI of the brain did not reveal evidence for migraine headaches (Ex 15F/21). It was also around this time that she began working part-time in addition to admitting

10

improvement in her headaches, particularly with medication. Multiple notes throughout 2018 and into 2019 support her work activity and her symptom improvement, as the claimant had routinely normal neurological findings on examinations (Ex 15F/1, 5, 11, 15, and 19).

PageID.57. While the ALJ considered plaintiff's part-time work as evidence that she was not disabled, the ALJ did not fully address the nature of that work as set out in the requested evidence.

For the reasons stated above, the Court concludes that the ALJ's decision was not supported by substantial evidence because the decision disregarded a significant portion of the record as having no probative value. *See Howard*, 276 F.3d at 241-42. While the evidence from plaintiff's employer was only a few pages long, it was "significant" because the ALJ thought the evidence was relevant to plaintiff's disability claim, the ALJ requested that plaintiff submit the evidence after the hearing, and the evidence appears to corroborate plaintiff's testimony. In addition, the ALJ's decision did not evaluate this requested evidence which both shed light on the nature of plaintiff's part-time work and appeared to corroborate her testimony. *See Hurst*, 753 F.2d at 519 (the ALJ's reasons for crediting or rejecting particular sources of evidence is absolutely essential for meaningful appellate review.). Accordingly, the ALJ's decision will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner will be directed to re-evaluate plaintiff's RFC and consider the letters sent by her employer (Exhibits 11E and 16F) regarding the nature of plaintiff's part-time work and her ability to perform full-time employment.

### IV. CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate plaintiff's RFC and consider the letters sent by her employer (Exhibits 11E

and 16F) regarding the nature of plaintiff's part-time work and her ability to perform full-time employment.  A judgment consistent with this opinion will be issued forthwith.

Dated:  September 23, 2021                                /s/ Ray Kent
                                                                                     United States Magistrate Judge